UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
Columbia Division

TOMER AMAR, *on behalf of himself and all similarly situated individuals*,

        Plaintiff,

v.

GENUINE DATA SERVICES, LLC,

        Defendant.

Civil Action No. 3:24-3035-JFA

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, TOMER AMAR, by Counsel, on behalf of himself and all similarly situated individuals, brings the following Class Action Complaint against the Defendant Genuine Data Services, LLC ("GDS"). In support of his Complaint, Plaintiff alleges as follows:

**INTRODUCTION**

1. This is a consumer class action for damages, costs and attorneys' fees under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA") brought against GDS, a consumer-reporting agency that routinely violates the FCRA's basic protections by failing to ensure that the information that it sells about consumers is as accurate as possible and reportable under the law.

2. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

3. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, the most fundamental of which is the requirement that CRAs "shall follow

reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

4. This case arises because GDS routinely violates this FCRA provision in its issuance of consumer reports to resellers like non-party RealPage. RealPage, using the moniker "The Leasing Desk," sells consumer reports to landlords for use in tenant screening. These reports are governed by the FCRA. 15 U.S.C. § 1681b(a).

5. In this instance, GDS provided data about Plaintiff to The Leasing Desk, which The Leasing Desk then furnished to Plaintiff's potential landlord. The GDS report included a purported criminal charge about Plaintiff that was actually a minor traffic violation of failing to pay a toll.

6. Plaintiff advised the landlord that he did not have any criminal history. Plaintiff was humiliated and embarrassed.

7. After Plaintiff's landlord hesitated to rent the property to him, Plaintiff requested a copy of his full file from RealPage, from which he was able to learn that GDS was the source of inaccurate criminal information provided about him.

8. Therefore, Plaintiff brings nationwide class claims against GDS for its failure to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates that it sells to resellers like The Leasing Desk in violation of 15 U.S.C. § 1681e(b).

## JURISDICTION

9. The Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this Judicial District. For example, GDS obtained,

housed, and distributed the inaccurate data about Plaintiff and Class Members to and from offices located in Chapin, South Carolina.

11. GDS successfully asserted as much in convincing an Eastern District of Virginia court in other litigation that the court lacked personal jurisdiction over GDS. GDS is therefore estopped from arguing here that this Court lacks personal jurisdiction over it.

12. Both jurisdiction and venue lie as the acts GDS committed and that damaged Plaintiff and Class Members occurred in whole or in part in this venue.

## PARTIES

13. Plaintiff is a natural person and a "consumer" as defined and governed by the FCRA, 15 U.S.C. § 1681a(c).

14. Defendant GDS is a Delaware limited liability company doing business in the State of South Carolina.

15. GDS is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

16. Specifically, Defendant GDS sells consumer reports, also called background reports, tenant screening-reports, and credit reports, to others who in turn supply information to landlords to use in deciding whether to rent to a prospective tenant. These reports include the prospective tenant's criminal history, sex offender status, landlord tenant court records, and credit information.

17. Defendant GDS regularly operates in this District and Division. It collects, houses, and reports data from offices located in this District and Division, and employs individuals tasked with engaging in the data reporting that underpin Plaintiff's claims.

18. GDS collects court records using computer servers and employees located here. It keeps those court records here. GDS employs individuals to conduct its operations here.

19. It sells its data to third party customers from this District and Division. And, as it pertains to the injuries alleged herein, those injuries were caused by conduct originating in this District and Division.

20. Discovery will show that Defendant has sold consumer reports regarding thousands of residents Nationwide and people with public records from those states to its clients.

21. Discovery will show that when it sells consumer reports to its clients, who are often also consumer-reporting agencies, Defendant GDS knows the identity of the ultimate end-user of the report.

22. Discovery will show that Defendant GDS has sold hundreds or thousands of consumer reports that were ultimately provided to end-users from within this District and Division.

23. In addition, to assembling the consumer reports that it sells, Defendant accesses, stores, and reproduces court records and other public records from courts and other government entities from within this District and Division.

24. GDS has also explained, again in the Virginia litigation, that the documents and employee witnesses with knowledge as to the reporting about Plaintiff are located in this District and Division.

## FACTS

25.     In early May 2022, Plaintiff applied to rent at the Loftin Place apartments in West Palm Beach Florida.

26.     As part of the application process, Plaintiff was required to undergo a background check.

27.     Plaintiff's landlord ordered Plaintiff's background report from The Leasing Desk on or around May 22, 2022.

28.     When The Leasing Desk received the request for Plaintiff's report, it requested criminal-record information from GDS.

29.     Discovery will show The Leasing Desk identified the end-user of Plaintiff's report when it requested his information from GDS.

30.     In response to The Leasing Desk's request, GDS provided traffic records attributable to Plaintiff. GDS obtained those traffic records of a toll violation dated April 24, 2019 from the Lee County Florida Court.

31.     In particular, GDS provided the following information to The Leasing Desk:



32.     A large number of traffic infractions are non-criminal, including in Florida, where Plaintiff's infraction occurred. Jordan Blair Woods, *Decriminalization, Police Authority, and*

*Routine Traffic Stops*, 62 UCLA L. REV. 672, 698 (2015) ("Since 1970, twenty-two states have decriminalized the bulk of minor traffic offenses by removing criminal penalties and reclassifying the offenses as noncriminal offenses. Those states are Alaska (1976), Arizona (1983), Colorado (1982), Connecticut (1975), Florida (1974), Hawaii (1978/1993), Idaho (1982), Indiana (1981), Maine (1975), Massachusetts (1986), Michigan (1978), Nebraska (1976), New Hampshire (1974), New York (1970), North Carolina (1986), North Dakota (1973), Oregon (1975), Rhode Island (1975), Vermont (1990), Virginia (1977), Washington (1979), and Wisconsin (1971). In these states, noncriminal traffic violations are punishable by fine only with no possibility of immediate incarceration."[1] *See* FLA. STAT. ANN. § 316.655 ("(1) A violation of any of the provisions of this chapter, except those violations with a specific criminal charge, as enumerated in s. 318.17, are infractions, as defined in s. 318.13(3)."); *id.* § 318.13(3) ("(1) A violation of any of the provisions of this chapter, except those violations with a specific criminal charge, as enumerated in s. 318.17, are infractions, as defined in s. 318.13(3).").

33.     Yet, GDS included Plaintiff's non-criminal history under the heading "Criminal & Other Records," listed Plaintiff as an "Offender," and noted the infraction as an "Offense."

34.     By reporting Plaintiff's non-criminal infraction as a criminal offense on its report, Defendant violated § 1681e(b).

35.     Discovery will show that after The Leasing Desk received this information from GDS, it manipulated the data to conform with the formatting of its background report it ultimately prepared and provided to the Loftin Place Apartments on or around May 22, 2022.

36.     That Defendant reported the information at all confirms its lack of procedures designed to curb violations of Section 1681e(b). Reasonable procedures would, for example,

---

[1] Available at https://www.uclalawreview.org/pdf/62-3-3.pdf

examine the type of charge and determine whether it was truly criminal in nature before including such misleading information under the heading identifying supposed criminal records.

37. Defendant's failure to have in place procedures designed to prevent such errors violates Section 1681e(b).

### *Defendant's Business Practices*

38. Discovery will show Defendant produces thousands of reports to The Leasing Desk alone each year.

39. Discovery will further reveal that Defendant uses standardized procedures and algorithms to generate the reports that it sells to customers like The Leasing Desk. As part of this standard process, it includes as criminal records data that is not genuinely criminal.

40. Those entries mislead report users into believing that the subjects of the reports are criminals when they are not.

41. Indeed, discovery will confirm that Defendant has no process in place to determine whether traffic violations are criminal in nature. Defendant simply obtains the records as they are from its third-party data vendor and inserts them into reports without substantive review or consideration as assure maximum possible accuracy before it reports the information about a particular consumer.

### *Defendant Acted Willfully*

42. At all times relevant to this lawsuit, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. GDS's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and GDS will continue to engage in this conduct

because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

43. In addition, Defendant's willful conduct will also be established by the following:

    a) Defendant takes no action to determine if the records assure maximum possible accuracy. This failure is unreasonable and willful.

    b) The FCRA was enacted in 1970; Defendant has had decades to become compliant.

    c) Defendant is a corporation with access to legal advice through its own general counsel's office and/or outside litigation counsel. Yet, there will be no contemporaneous evidence that it determined that its conduct was lawful.

    d) Defendant knew or had reason to know that its conduct was inconsistent with FTC and CFPB guidance, case law, and the plain language of the FCRA.

    e) Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

    f) Defendant's violations of the FCRA were repeated and systematic.

    g) Defendant's FCRA violations were carried-out according to Defendant's established policies and procedures; the violations alleged herein were not accidental or isolated to Plaintiff.

## CLAIMS FOR RELIEF

### COUNT I – FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### Class Claim

44. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

45. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for violations of Section 1681e(b) for himself and on behalf of a class (the "Inaccuracy Class") defined as:

> All natural persons residing in the United States (a) who were the subject of a report sold by Defendant; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) containing a traffic infraction that was reported as a criminal charge; (d.) where that traffic infraction is not a criminal offense under the laws of the state or the District of Columbia under which it was charged.
>
> Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

46. **Numerosity. Fed. R. Civ. P 23(a)(1).** Discovery will show that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Defendant and the class members may be notified of the pendency of this action by published and/or mailed notice.

47. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether GDS was required by 15 U.S.C. § 1681c(a) to delete the information after 7 years; (2) whether GDS's conduct constituted a violation of the FCRA; and (3) whether GDS's conduct was willful.

48. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the

other putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

49. **Adequacy of Representation**. Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with his counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor his counsel have any interest that might conflict with his vigorous pursuit of this action.

50. **Superiority**. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by GDS's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

51. GDS violated § 1681e(b) of the FCRA as to the Plaintiff and each of the class members by failing to assure maximum possible accuracy in the information it reported about Plaintiff and members of the class.

52. Plaintiff and each putative class member suffered real and actual harm and injury.

53. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in GDS's files and reports.

54. In each instance, each class member's credit report contained derogatory information that GDS reported that was inaccurate.

55. GDS's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering RealPage liable under 15 U.S.C. § 1681o.[2]

56. As a result of these FCRA violations, GDS is liable for statutory damages from $100 to $1,000 for Plaintiff and each class member, punitive damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, on behalf of himself and the putative class members, moves for class certification and for statutory and punitive damages, as well as his attorney's fees and costs against the Defendant; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**TOMER AMAR**

By: ___/s/ Penny Hays Cauley___

---

[2] Plaintiff seeks statutory and punitive damages on behalf of himself and others. If class certification is denied, Plaintiff intends to seek actual damages for Defendant's violation.

Penny Hays Cauley, Fed. ID No. 10323
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
Telephone: (843) 665-1717
Fax: (843) 665-1718 Facsimile
Email: phc917@hayscauley.com

Leonard A. Bennett (*pro hac vice* forthcoming)
Craig C. Marchiando (*pro hac vice* forthcoming)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

*Counsel for Plaintiff*